UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY,<br><br>     Plaintiff,<br><br>vs.<br><br>D. G. ADAMS, Warden, Corcoran State Prison, *et al*,<br><br>     Defendants. | Case No. 1:11-cv-01281-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Jamisi Jermain Calloway, a California state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action against various individuals employed by the California Department of Corrections and Rehabilitation.[1] Calloway is currently incarcerated at the California Health Care Facility, Stockton, California. Calloway's complaint arises out of his incarceration at California State Prison–Corcoran ("CSP") and concurrent treatment at the California Substance Abuse Treatment Facility, Corcoran ("CSATF").[2]

---

[1] In addition to Warden Adams, CSP, Calloway names as defendants: Jeffrey Wang, M.D. CSP; Shults, Dietician CSP; Edgar Clark, M.D. CSP; Ken Clark, Warden, CSATF; Melissa Fritz, SRN III, CSATF; Peter McCauley, M.D. CSATF; Masky, M.D. CSATF; Louis Ann, Dietician, CSATF; A. Enenmoh, Chief Medical Officer CSATF; and J. Walker, Chief California Prison Health Care Services.

[2] In his Complaint, Calloway refers to the California State Prison–Corcoran as CSP #1 and the California Substance Abuse Treatment Facility as CSP # 2. Both are physically located in Corcoran, California.

**I.  SCREENING REQUIREMENT**

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[3]  This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[4]  Likewise, a prisoner must exhaust all administrative remedies as may be available,[5] irrespective of whether those administrative remedies provide for monetary relief.[6]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7]  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8]  Failure to state a claim under § 1915A incorporates the familiar standard

---

[3]  28 U.S.C. § 1915A(a).

[4]  28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[5]  42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[6]  *See Booth*, 532 U.S. at 734.

[7]  Fed. R. Civ. P. 8(a)(2).

[8]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*
<span style="float:right">(continued...)</span>

applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[9]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[10] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[12] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]

## II.   GRAVAMEN OF COMPLAINT

Calloway suffers from end-stage renal failure, which requires that Calloway receive thrice weekly hemodialysis treatments. Calloway's complaint spans a period extending from

---

[8](...continued)
*Twombly*, 550 U.S. 554, 555 (2007)).

[9]     *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[10]    *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[11]    *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[12]    *Id.*

[13]    *Id.* (quoting *Twombly*, 550 U.S. at 555).

2007 through 2010.[14] It appears that, although housed at CSP, Calloway was transported to CSATF for his dialysis treatments. On December 1, 2007, Calloway was transported to CSATF for treatment by Davita, Inc. Hemodialysis Unit, at which time he refused to sign a consent form. His refusal to consent to treatment notwithstanding, Calloway was subjected to hemodialysis treatment by Davita in violation of his due process rights. According to

---

[14]   The Court notes that, in addition to this action, Calloway has five additional civil rights complaints pending in this Court, of which this Court takes judicial notice. Fed. R. Evid. 201.
   *Calloway v. Warden Corcoran State Prison* (*Calloway I*), 1:05-cv-01284-BAM. Asserting excessive force, retaliation, racial discrimination, denial of equal protection, deliberate indifference, and conspiracy claims spanning the period March 2003 through November 2005 while incarcerated at CSP/CSATF. Scheduled for trial on February 25, 2014.
   *Calloway v. Veal* (*Calloway II*), 1:08-cv-01896-LJO-GSA. Although Calloway asserted deliberate indifference, retaliation, and excessive force claims spanning the period July 2007 through August 2008 while incarcerated at CSP/CSATF, for procedural reasons he was limited to a deliberate indifference claims unrelated to this action. Scheduled for trial on April 22, 2014.
   *Calloway v. Veal* (*Calloway III*), 2:09-cv-02907-GEB-EFB. Asserts a deliberate indifference claim during the July – August, 2006 time frame while incarcerated at CSP/CSATF. The case was dismissed on February 21, 2013, and is presently on appeal to the Ninth Circuit, Case No. 13-15605.
   *Calloway v. Scribner* (*Calloway IV*), 1:11-cv-00803-DLB. Asserts a deliberate indifference claim arising in May 2002 while incarcerated at CSP/CSATF. The docket in that action reveals that not all the defendants have been served and appeared. The docket does show, however, that the action was dismissed on statute of limitations grounds as to those defendants who had appeared.
   *Calloway v. Kelley* (*Calloway V*), 1:11-cv-01090-SAB. In that action Calloway raised claims of deliberate indifference and forced medication based upon false reports in retaliation for Calloway's complaints regarding inadequate medical care and overcrowding in the prison between November 2009 and February 2012 while incarcerated at CSP/CSATF. In addition to monetary damages Calloway requested that he receive a transplant. The record in that case indicates that after screening Calloway was permitted to proceed on his retaliation claim only. The record further reflects that Calloway declined the opportunity to further amend his Complaint to cure the defects noted in the Screening Order, and elected to proceeded on the retaliation claim only.

DISMISSAL ORDER
*Calloway v. Adams*, 1:11-cv-01281-RRB – 4

Calloway, despite medical orders, he was denied a renal diet on occasion and, because he was denied ice chips, he was forced to drink large quantities of water, as well as being denied various sundry items. Calloway contends this exhibited deliberate indifference to serious medical needs.

Calloway requests that: (1) he be transferred to a California medical facility for adequate renal care; (2) he be sent for an adequate evaluation for a renal transplant; and (3) an award of compensatory and punitive damages.

## III.  DISCUSSION

### A.  Request for Transfer

Initially the Court notes that it appears that since the Complaint was filed, Calloway has been transferred to a California Medical Facility. Consequently, that issue has been rendered moot. Furthermore, it appears that Calloway sought this same relief in *Calloway I*, which was denied on November 26, 2013 for lack of jurisdiction.[15] It was also denied for lack of jurisdiction in *Calloway II* on December 3, 2013.[16]

### B.  Transplant

In denying Calloway's request for a transplant in *Calloway V*, it was noted that the decision that Calloway was not a candidate for a transplant was made by the Loma Linda University Medical Center, and the Court did not have jurisdiction over the Loma Linda

---

[15]   *Calloway I*, 1:05-cv-01284-BAM, Docket 123.

[16]   *Calloway II*, I:08-cv-01896-LJO-GSA, Docket 122.

University Medical Center, who was not a defendant in the action.[17] Simply refiling a new action in which he again fails to name the Loma Linda University Medical Center does not cure this defect. Furthermore, Calloway does not alleges any facts upon which, if established, it might be found that the Loma Linda evaluation was inadequate, or that a further evaluation was necessary or appropriate. At most, Calloway has shown that there is a mere difference of opinion regarding the course of medical treatment, which is "insufficient as a matter of law, to establish deliberate indifference."[18]

### C.    Forced Medical Treatment

Analysis starts with the proposition that the Supreme Court has "assumed, and strongly suggested that the due process clause protects the traditional right to refuse unwanted lifesaving medical treatment."[19] In the context of this case it does not appear that Calloway was refusing treatment *per se*; rather, it appears that Calloway was objecting to the treatment being administered by the CSATF Davita Hemodialysis Unit. In his Complaint Calloway states that he refused treatment by the Davita Hemodialysis Unit (referred to by Calloway as CSP #2) "because he was being housed at CSP #1 and at which time during plaintiff assign institution for renal treatment and care CSP # 1 was not adequately equip

---

[17]    *Calloway V*, 1:11-cv-01190, Docket 13, p. 8.

[18]    *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

[19]    *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278–79 (1990)).

DISMISSAL ORDER
*Calloway v. Adams*, 1:11-cv-01281-RRB – 6

[*sic*] or designed to deal with the serious needs of renal patients with severe renal failure." Calloway does not allege that the treatment at the Davita Hemodialysis Unit was inadequate. Reduced to its essence, Calloway's argument is that he has a due process right to receive treatment in the prison facility in which he is housed. Extensive research by this Court has revealed no authority that supports this novel argument. While the Constitution unquestionably mandates that the State provide a prisoner adequate medical care, there is no recognized constitutional right to receive medical treatment in the same facility as housed.

Thus, the issue before this Court is whether the actions of the Defendants in compelling Calloway to undergo dialysis treatment at CSATF, either individually or collectively, violated the Eighth Amendment. In the context of medical treatment, the Supreme Court stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[20]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that

---

[20]   *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

DISMISSAL ORDER
*Calloway v. Adams*, 1:11-cv-01281-RRB – 7

only the former violates the Constitution.[21]  In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[22]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[23]  The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.  Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983.  A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs.  If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[24]

This Court assumes that Calloway's condition, renal failure, is a serious medical condition and that the failure to properly treat that condition could result in further significant

---

[21]   *Id.* at 106.

[22]   *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[23]   *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[24]   *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

injury or inflict unnecessary pain and suffering. But that is not the question posed in this case. The question posed in this case is whether or not Calloway has adequately pleaded that: (1) one or more of the defendants denied him necessary treatment; and (2) he *in fact* suffered further significant injury, or was subjected to unnecessary pain and suffering as a result. For the reasons that follow, this Court holds that Calloway has not.

It is clear from the allegations of the Complaint that Calloway's refusal of medical treatment notwithstanding, he received appropriate and necessary medical treatment. It is also clear from the allegations that, not only did Calloway *not* suffer further significant injury, but the hemodialysis treatment *prevented* further injury. Nor does it appear that administration of the hemodialysis treatment subjected Calloway to unnecessary pain and suffering. Thus, this Court must conclude that, under the facts of this case, administration of the hemodialysis treatment by the CSATF Davita Hemodialysis Unit did not constitute a violation of the Eighth Amendment.[25]

---

[25] Although Calloway makes generalized allegations that he was denied adequate treatment, in addition to the fact that his allegations are internally inconsistent and contradictory, other than the fact that he objects to the treatment being administered at CSATF not CSP and the inadequacy of the facilities for renal patients at CSP, Calloway does not allege any facts to support his conclusory allegations. *See Iqbal* 556 U.S. at 678.
 The Court further notes that Calloway raised a similar claim in *Calloway V* in which makes similar allegations to a treatment that was terminated at his request on November 9, 2009. In screening that case, the Court rejected that claim, but allowed a retaliation claim to proceed. The Court also gave Calloway an opportunity to amend his complaint to cure the deficiencies or to proceed on the retaliation claim alone. *Calloway V*, 1:11-cv-01090-SAN, Docket 13. Calloway elected to proceed without amendment. *Id.*, Docket 15.

### D.    Inadequate Diet/Ice Chips/Sundries

Calloway contends that between August and December 2007 he was denied a diet appropriate to his medical condition as ordered by Dr. McCauley.  Whether this denial was continuous during that period or on a more sporadic basis is not clear.[26]  Calloway also alleges that he was denied ice chips, hypoallergenic deodorant, soap, head and shoulder shampoo, and moisturizing lotion.  Calloway contends that these deprivations constituted deliberate indifference to his serious medical needs.  Even if Calloway's factual allegations concerning the denial are accepted as adequate, because he has not alleged that he suffered any significant injury or unnecessary pain and suffering as a result of those deprivations, those allegations fall far short of establishing deliberate indifference.

In addition to the vagueness of when and how often he was denied an adequate renal diet, Calloway uses a "shotgun" approach in naming the responsible defendants.  It is unclear from the allegations in the complaint just which official(s) was(were) responsible for providing a special renal diet.  This is particularly problematical because Calloway names as defendants CDCR employees at both CSP (where he was housed and presumably responsible for his diet) and CSATF  (where he merely received treatment).

While questionable, it cannot be said at this stage that Calloway cannot adequately, truthfully plead an  Eighth Amendment claim based upon the denial of an adequate diet that is not legally "frivolous or malicious," "fails to state a claim on which relief may be granted,"

---

[26]    It also appears that, although Dr. McCauley initially ordered that Calloway be provided a renal diet, when a renal diet was unavailable Dr. McCauley may have either approved or ordered a regular diet be provided.

or "seeks monetary relief against a defendant who is immune from such relief."[27] Thus, because it would not necessarily be futile, the Court must provide Calloway an opportunity to file an amended complaint that adequately pleads a viable cause of action.[28]

In amending his Complaint, Calloway must specifically allege: (1) a medical order that he be provided a special renal diet and the other sundry items necessary to his medical condition that Calloway claims were denied; (2) the dates upon which he was denied a special renal diet or other sundry items necessary to his medical condition; (3) the specific *physical injury* he suffered as a result of each denial; and (4) identify the person(s) responsible for each denial.

## IV.   CONCLUSION and ORDER

To the extent that Calloway requests that this Court order that he be transferred to a California medical facility for adequate renal care and that he be sent for an adequate evaluation for a renal transplant, because he cannot truthfully plead facts sufficient to establish those claims, they must be denied without leave to amend. Likewise, to the extent that Calloway seeks relief related to his treatment by the CSATF Davita Hemodialysis Unit, he cannot truthfully plead facts sufficient to establish that claim. With respect to Calloway's Eighth Amendment claim arising out of the failure to provide him a special renal diet and sundry items alleged to be necessary to alleviate his medical condition, although it is highly

---

[27]   28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c).

[28]   *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

unlikely that Calloway can properly plead a viable cause of action under the Eighth Amendment, the Court will grant him an opportunity to so do.

Therefore,

1. Calloway's Eighth Amendment claim that he was denied an appropriate renal diet and sundry items necessary to his medical condition is **DISMISSED** with leave to amend.

2. All other claims are **DISMISSED** *without* leave to amend.

3. Calloway may file an Amended Complaint consistent with this Order on or before **March 21, 2014**.

4. To the extent available, Calloway should attach to his Amended Complaint all documentation evidencing exhaustion of his administrative remedies.

If Calloway fails to file an Amended Complaint within the time specified, or such other time as the Court may allow, the Complaint may be dismissed without prejudice without further notice.

**IT IS SO ORDERED** this 12th day of February, 2014.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

DISMISSAL ORDER
*Calloway v. Adams*, 1:11-cv-01281-RRB – 12